IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Nancy J. Moellman,   Case No. 3:04CV7528

        Plaintiff

   v.   ORDER

Faurecia Exhaust Systems, Inc.,

        Defendant

Plaintiff Nancy Moellman brought suit claiming Defendant Faurecia Exhaust Systems, Inc. terminated her because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). Jursidiction exists under 28 U.S.C. § 1331. Pending is Faurecia's motion for summary judgment. For the following reasons, that motion will be denied.

**Background**

Moellman worked as a payroll coordinator for Faurecia and its predecessor from March 12, 1990, to March 5, 2004. She was responsible for processing the payroll for all of Faurecia's salaried employees throughout the United States.

For most of Moellman's tenure with Faurecia, the company used the Ceridian payroll system. Because support for the Ceridian system was no longer available, Faurecia switched to the ADP payroll system in December, 2003. The transition was not without its problems and Moellman strongly voiced both her preference for the old system and complaints about the new system. She claims that in response, Kim Franklin, her supervisor, told her that she needed to "accept change" and "was unwilling to change with the times."

Between January and mid-February, 2004, Moellman met with Faurecia's Director of Human Resources, Scott Roy. They discussed the problems with the new ADP payroll system, Moellman's views of the system, and her belief that Franklin was not supporting her in the transition. Following the meeting, Roy directed Franklin to document any issues with Moellman and the transition to the ADP system.

In addition to processing the regular payroll, Moellman's job also required her occasionally to create manual checks to correct errors in the normal payroll process. Because of the potential for abuse or fraud with those checks, Moellman was not authorized to sign them herself. Instead, two different authorized individuals had to sign the manual checks before they were valid.

In February, 2004, Moellman approached Kevin Lammars, Faurecia's new director of finance, and asked him to sign a manual check. Lammars told her that he was not authorized to do so. According to Moellman, she told Lammars that unauthorized signors had occasionally signed checks when necessary. He declined to do so. Lammars then reported the incident to Roy, who directed Lammars to conduct an inquiry.

In the course of his investigation, Lammars discovered two checks with what appeared to be forged signatures. He contacted Kristin Hammar, whose signature was the one forged, and she confirmed that she had not signed the two checks. Moellman admits that she forged Hammar's signature on another occasion, but denies doing so on either of these two checks and argues, in any event, that it was not improper for her to do so.

Around the same time, Roy also discovered that payroll records suggested Moellman had improperly advanced herself thirty-two hours of overtime pay in December, 2003. Months later, he concluded that those concerns were unfounded.

Faurecia contends that Roy decided to terminate Moellman because of the forgeries and unauthorized pay advance. He asked Franklin if she concurred in his decision and she agreed. As continuity was essential in the payroll process, Faurecia began to look for Moellman's replacement before terminating her. On February 28, 2004, Franklin contacted Rhonda Abbot, thirty-seven at the time, to inquire if she would be interested in Moellman's position. Abbott accepted the position.

On March 5, 2004, Moellman, Franklin, Roy, and Kim Meadows, another manager from Human Resources, met in Franklin's office. Roy initially noted that Moellman's performance with respect to the transition to the ADP system had improved. He then informed Moellman of Lammers' discovery of the forged checks and of the unauthorized pay advance. Roy stated that as a result of these two issues he was terminating her, effective immediately. This was the first time anyone brought these issues to Moellman's attention. She admitted forging Hammar's signature, but denied advancing herself overtime pay.

## Discussion

To state a prima facie case of age discrimination under the ADEA, Moellman must show that: 1) she was a member of the protected class (aged forty to seventy); 2) she was subjected to an adverse employment action; 3) she was qualified for the position; and 4) she was replaced by a substantially younger employee. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996).

If a plaintiff makes out a prima facie case, the burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for its challenged employment action. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc). The plaintiff then has the burden of proving that the asserted justification or justifications are mere pretext. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003). He or she may do this by showing the defendant's justifications 1) had no basis in fact, 2) did not actually motivate the actions, or 3) were insufficient to warrant the actions. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Moellman has stated a prima facie case of age discrimination. There is no dispute that she is a member of the protected class, that she was subjected to an adverse employment action, and that she was replaced by someone substantially younger. Faurecia, however, contests whether Moellman was qualified for her position.

An employee is qualified if she met her employer's legitimate expectations at the time of her termination. *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548-49 (6th Cir. 1991). Because Moellman forged signatures on manual checks, Faurecia claims that she did not meet its expectations when they terminated her. However, "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). Thus Moellman's forgeries are inapplicable to this issue and she has made out her prima facie case.

Faurecia has, in turn, articulated two legitimate, non-discriminatory reasons for terminating Moellman: 1) that she forged signatures on at least two manual checks; and 2) that she advanced herself overtime pay without authorization. Dispositive in this motion is whether Moellman has submitted sufficient evidence to allow a jury to conclude both of Faurecia's justifications were pretextual.

### 1. The Forgery Justification

Moellman contends that the forgery allegations had no basis in fact and in any event, did not actually motivate Faurecia's decision to terminate her.

Moellman's first argument fails. She must do more than dispute the facts upon which Faurecia discharged her:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir. 1998).

Here, Moellman asked an unauthorized signor to forge a name on a manual check. Faurecia conducted an investigation that uncovered two forged signatures on manual checks signed with a name that Moellman has admitted forging. Personnel records indicate that Moellman had once before forged a signature on a manual check. Finally, Moellman was the only employee able to create manual checks subject to forgery. None of this is in dispute. Thus, Faurecia had sufficient basis to conclude Moellman committed forgery.

Yet it remains unclear if Moellman's actions actually motivated Faurecia to fire her. Moellman testified that when she forged Hammar's signature, she immediately informed

5

Franklin that she had done so. Franklin did not object and never disciplined Moellman.[1] A jury could conclude that Faurecia ratified Moellman's actions, and, therefore, those actions did not motivate the company to fire her. Thus, there remains a question of fact whether Faurecia's forgery justification was pretextual.

### 2. The Unauthorized Pay Advance Justification

Moellman claims Faurecia never had a good faith belief that she improperly advanced herself overtime pay, and therefore that justification was also pretextual.

Faurecia admits now that Moellman did not use her position to take an improper advance. Yet, an inaccurate justification is not *per se* pretextual. *Texas Dept. of Community Afairs v. Burdine*, 450 U.S. 248, 254 (1981). To prevail, Moellman must show that Faurecia had no honest, good faith belief in that justification when it relied on it to terminate her. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001). The key question remains whether Faurecia made sufficient inquiry to come to a reasonable and rational decision. *Smith*, 155 F.3d at 806-07. The burden remains on Moellman to show the company did not conduct such an inquiry. *Braithwaite*, 258 F.3d at 497.

Though the question is close, Moellman has submitted sufficient evidence such that a jury could conclude Faurecia did not have an honest, good faith belief in this proffered justification. Moellman testified that she was never questioned about the alleged improper advance nor shown the payroll records in question. Such steps would seem to be part of any

---

[1] Faurecia disputes Moellman's claim that she informed Franklin of her forgery. But, at summary judgment, courts view all facts in a light most favorable to the non-moving party. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir. 1997). Thus, for the purpsose of this motion, I will accept Moellman's account.

sufficient inquiry. In addition, Moellman points to the inconsistencies in Franklin's testimony that suggest Franklin may have known before Faurecia terminated Moellman that she had not acted improperly. Finally, Roy testified in his deposition that he never verified any of the evidence against Moellman. Taken together, a jury could conclude that Faurecia had no honest, good faith belief in this justification, and that its reliance on it was pretextual.[2]

## Conclusion

Moellman has made out a prima facie case of age discrimination and offered sufficient evidence that Faurecia's proferred justifications for terminating her were pretextual. Consequently:

It is, accordingly,

ORDERED THAT Faurecia's motion for summary judgment should be, and the same hereby is denied.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

---

[2] In addition, Moellman testified that Franklin stated that Moellman was not accepting change and was not demonstrating a willingness to change with the times. Moellman argues that these comments are probative of Faurecia's discriminatory intent. Faurecia objects, arguing that isolated and ambiguous remarks cannot support a charge of discrimination, *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993), and that an age-based comment must be "direct and unambiguous" and require no "inferences or presumptions," *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Because Moellman presented sufficient evidence that Faurecia's justifications were pretextual, independent of Franklin's alleged comments, I need not determine their admissibility at this time.